Filed 2/24/22  Trust of Preovolos CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| Trust of PETER E. PREOVOLOS & LITSA S. PREOVOLOS.<br><br>PETER E. PREOVOLOS,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ATHANASIOS K. PREOVOLOS,<br><br>Objector and Appellant. | D078711<br><br><br>(Super. Ct. No. 37-2020-00035119-PR-TR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Julie C. Kelety, Judge.  Motion to dismiss denied; order affirmed.

Preovolos Lewin and James Michael Hester for Objector and Appellant.

Horvitz & Levy, Jeremy Brooks Rose and Eric Samuel Boorstin; Withers Bergman, Jeremiah James Moffit and Ann Margaret Wicks for Plaintiff and Respondent.

Objector and appellant Athansios (Thanasi) K. Preovolos, an attorney, appeals from an order disqualifying his law firm Preovolos Lewin ALC (Preovolos Lewin) from representing Thanasi in connection with a probate

petition filed by Thanasi's father, plaintiff and respondent Peter E. Preovolos.[1]  Peter's petition sought, among other things, to invalidate an irrevocable trust and postmarital agreement drafted by Thanasi and Preovolos Lewin that Peter and his former wife Litsa had entered into as a consequence of Peter's infidelity.  In its disqualification order, the probate court ruled it was undisputed that Thanasi and Preovolos Lewin had represented Peter for many years in various matters and continued to legally represent Peter's businesses; Thanasi drafted documents that prompted creation of the documents Peter sought to invalidate in probate court; and Thanasi was a trust beneficiary and "trust protector" to the irrevocable trust and to a family trust, which Thanasi had amended, giving him a personal stake in the petition's outcome.  It ruled Peter was a former client of Preovolos Lewin, and that a dispute existed over whether Peter had validly consented to the representation and waived the attorney-client privilege.

Thanasi's basic contention on appeal is that he has a fundamental right to represent himself, and neither California Rules of Professional Conduct nor the attorney-client privilege, which Thanasi argues Peter has waived, prevents his self-representation.  Thanasi further contends all of the probate petition's claims flow from the postmarital agreement, and thus the family court, not the probate court, has priority and "exclusive and continuing jurisdiction" over the dispute.  Peter has moved to dismiss this appeal, and the related appeal in Peter's malpractice action, as frivolous or taken solely for delay.  He argues Thanasi has no reasonable argument that Preovolos

---

[1]     We refer to the parties by their first names for clarity, not out of disrespect.  Thanasi separately appeals from a temporary restraining order entered in a malpractice action filed by Peter prohibiting Thanasi and Preovolos Lewin from providing legal assistance, advice or representation to "anyone adverse to Peter . . . in and out of court."

2

Lewin should be permitted to oppose him in a matter arising out of legal work that Preovolos Lewin performed for him.

We deny Peter's motion to dismiss the appeal because our consideration of the motion entails review of the record and an examination of Thanasi's arguments. Having considered Thanasi's points, we hold the appeal is without merit and affirm the probate court's disqualification order. Thanasi has not established the underlying factual basis for the order lacked substantial evidence or that the order was outside the court's broad discretion to " 'preserve public trust in the scrupulous administration of justice and the integrity of the bar.' " (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 846; *Walker v. Apple, Inc.* (2016) 4 Cal.App.5th 1098, 1106.)

### FACTUAL AND PROCEDURAL BACKGROUND[2]

Thanasi is an attorney, senior partner, and 100 percent owner of a law firm currently known as Preovolos Lewin, ALC (formerly Preovolos Lewin & Hezlep, a Law Corporation). Preovolos Lewin is a corporation with other attorney employees and one other attorney officer, Olin Lewin. For decades, Thanasi and Preovolos Lewin or its predecessor firms have provided personal legal and tax advice to Peter and Litsa, and have been legal counsel to several successful businesses founded by Peter, including Alpha & Omega Financial Management Consultants, Inc. (Alpha & Omega) and PenChecks, Inc. (PenChecks). Thanasi and Preovolos Lewin have prepared personal estate planning documents for Peter and Litsa, as well as Peter's personal income taxes. They assisted Peter and Litsa with real property transactions.

---

[2] The background facts are taken in part from declarations in support of and in opposition to Peter's motion to disqualify counsel and Peter's verified probate petition, which is also an exhibit to Peter's motion to dismiss the appeal.

3

Peter does not recall being informed of or waiving conflicts of interest arising out of Preovolos Lewin's joint representation of him and Litsa.

After Peter engaged in an extramarital affair and Litsa threatened divorce, Thanasi drafted an irrevocable trust and postmarital agreement, the latter intended to act as an "economic sanction" on Peter for his misconduct. Thanasi was appointed "trust protector" of the irrevocable trust, into which all of Peter and Litsa's assets were placed. Thanasi's brothers Spiro and Nicholas were named trustees of the trust. Thanasi also drafted a restatement of the Preovolos family trust dated December 23, 1991, naming himself a trust protector of the family trust and adding language that appeared to limit Peter's right to revoke that trust. Thanasi had Peter sign a durable power of attorney for finances naming Thanasi and Thanasi's brother Spiro as agents.

In connection with the drafting of these documents, Peter and Litsa in July 2014 entered into a retainer agreement with Preovolos Lewin to provide them legal services in (1) mediating their marital issues; (2) preparing the postmarital agreement; and (3) potentially filing an uncontested dissolution action. In a separate exhibit that Peter and Litsa initialed and signed, they consented to the joint representation by Thanasi and acknowledged the purpose of the retainer was to disclose "the potential conflict so that [they] . . . can waive any potential conflict, and to comply with the ethical rule of the California State Bar."[3] Though Peter had asked whether he should retain outside independent counsel to advise him, Litsa and Thanasi discouraged

_____

[3] The retainer states: "In determining whether you should consent to this joint representation . . . you should carefully consider [¶] . . . [¶] . . . although at this time there does not appear to be any difference of opinion between you with regard to the legal and/or tax issues of which [Preovolos Lewin] expects to provide services, it may turn out, upon further consultation or changes in circumstances that a conflict has arisen."

4

him from doing so. According to Peter, Thanasi asked, "Do you think we'd lie to you?"

In early 2020, Peter began exploring selling PenChecks, for which Thanasi served as legal counsel. When Thanasi found out, he told another PenChecks board member that Peter would be removed from the company if he continued to explore the potential sale. Thereafter, the board member called for a surprise vote seeking to force Peter to retire from the company. Peter was forced to retire from PenChecks in June 2020. He negotiated a retirement package with a PenChecks board subcommittee, but when the matter was put to a vote by the board, Litsa, Spiro and Thanasi refused to recuse themselves. The board voted against the retirement package.

In July 2020, Litsa petitioned for dissolution of her and Peter's marriage.

In September 2020, Peter, individually and as cotrustee of the Preovolos family trust, filed a petition in probate court to set aside the postmarital agreement and irrevocable trust and obtain damages, including for breach of fiduciary duty and financial elder abuse. Several months later, Peter sued Thanasi and Preovolos Lewin for legal malpractice, breach of fiduciary duty and other relief.

At some point after Peter filed his probate petition and the malpractice action, the PenChecks board offered to give him his negotiated retirement package in exchange for dismissal of those actions.

In January 2021, Peter moved to disqualify Thanasi and Preovolos Lewin from acting as counsel to Thanasi, Spiro and Nicholas in the probate case. He argued the representation violated numerous California State Bar Rules of Professional Conduct,[4] including those relating to client

---

[4]     Rule references are to the State Bar Rules of Professional Conduct.

communications and confidential information (rules 1.4, 1.6); addressing conflicts of interest involving current and former clients (rules 1.7, 1.9); and prohibiting lawyers from entering into business transactions or acquiring interests adverse to a client (rule 1.8.1). Peter cited rules imputing the prohibitions and conflicts to the law firm, Preovolos Lewin (rules 1.8.11, 1.10). Peter argued Thanasi and Preovolos Lewin had unwaivable conflicts of interest and he was never properly advised of the conflicts presented by Thanasi's joint representation of him and Litsa, or by Thanasi's self-interest as a beneficiary to the trust Thanasi drafted and for which he designated himself trust protector, "thereby giving him complete control over assets that would ultimately be passed to him as an inheritance if they were not consumed prior to Peter's demise." Peter argued he did not waive any conflict or the attorney-client privilege with respect to any communications with counsel during the past 15 years. He argued counsel did not obtain properly informed written consent to the conflicts when they drafted the irrevocable trust and postmarital agreement; that the 2014 retainer agreement did not meet that standard as it cited a nonexistent rule, failed to explain the conflict and potential harm in easily understood language, and purported to waive an unwaivable conflict.

Peter also argued the attorney-client privilege mandated disqualification given Thanasi and Preovolos Lewin's years of legal work for Peter in marital, property, business and estate planning matters: "By taking positions adverse to Peter in this action and in favor of Respondents, there is a substantial risk that Counsel will utilize information gained under the protection of the attorney-client privilege to harm Peter's interests and advance Thanasi's and Respondents['] interests." Finally, Peter argued Thanasi and Preovolos Lewin should be disqualified as witnesses in the

6

litigation, pointing to Thanasi's drafting of the irrevocable trust at issue in the petition, the restatement of the family trust, and other related documents. Peter asserted he would call Thanasi and other Preovolos Lewin attorneys who oversaw the business as witnesses in the matter, as Thanasi was privy to confidential information and key facts relating to his and his wife's estate planning and assets, as well as Peter's intentions relating to the latest trust restatement. Peter argued Thanasi was in a unique position to exploit that information. According to Peter, their likely status as witnesses likewise prohibited Thanasi and Preovolos Lewin from acting as advocates in the litigation.

In opposition, Thanasi did not challenge Peter's assertions about his intimate knowledge of Peter and Litsa's personal financial matters and the businesses. He admitted he "has represented his mother and [Peter] in their joint estate plan, has performed legal services for all of the family's businesses for over 25 years, and is intimately aware of the substantive issues raised in both this Petition and in [Peter's] malpractice claim." Claiming that for purposes of the motion he and his law firm Preovolos Lewin were "the attorney," Thanasi argued he was not representing a client, but himself, which he had a fundamental right to do. Thanasi maintained he "has not been hired by a client that is adversarial against [Peter]. [Peter] has sued Defendant, not only in this action but in a related action for legal malpractice. . . . and has made outrageous, misleading, and false allegations in both." Thanasi argued the Rules of Professional Conduct were intended to establish disciplinary standards, and were not "designed to be a basis for civil liability or prohibiting a defendant from defending himself." According to Thanasi, even if he violated or breached a rule, the probate court was not the proper forum to make that determination. Thanasi maintained the

7

circumstances did not involve "two masters" or an attorney stuck between two clients with adverse interests as in Peter's cited cases. Thanasi argued that given his intimate knowledge, new counsel would not make any difference.

Thanasi further argued the attorney-client privilege did not prohibit him from representing himself as the privilege ceases when a client alleges his attorney breached his duties, which Peter did in both the probate and malpractice cases. He argued Peter waived the attorney-client privilege when he signed the 2014 retainer agreement, and also by setting forth "hundreds of factual statements" involving Litsa, Thanasi and other sons in the probate and malpractice cases and by making "key documents" exhibits.

Following arguments on the matter, the probate court granted the motion as to Thanasi and denied it without prejudice as to Spiro and Nicholas.[5] The court found it was undisputed that Thanasi and Preovolos Lewin had represented Peter for many years in various matters, that Thanasi continued to represent Peter's business, and that Thanasi drafted the trust at issue in the petition as well as several documents prompting the creation of the trust and postmarital agreement that Peter sought to invalidate. It observed Thanasi was a trust beneficiary and the trust protector to both the irrevocable trust and the family trust, which he was alleged to have amended. The court found Peter was a former client of Thanasi and Preovolos Lewin, particularly with respect to the postmarital agreement, and that an actual conflict existed. It found a dispute existed as to whether Peter waived the attorney-client privilege and consented to the

---

[5] The probate court's order granting the disqualification motion indicates that Spiro substituted in a new attorney and Nicholas afterwards resigned as trustee and was dismissed from the case. The portion of the order denying the motion as to Spiro and Nicholas is not at issue in this appeal.

joint representation: "There is no evidence of written consent, as required under the [R]ules of [P]rofessional [C]onduct, and the waiver by [Peter] does not appear to have been informed and could possibly be the product of duress." The court specifically addressed Thanasi's ability to represent himself: "Contrary to [Thanasi's] assertions, Thanasi is not representing himself in pro per, and the motion to disqualify does not argue that Thanasi is not entitled to self-representation." It observed that as of its ruling, Thanasi was still represented by attorney James Hester of Preovolos Lewin. The court agreed with Peter that Thanasi and possibly Preovolos Lewin may be witnesses, and disagreed with Thanasi's assertion that new counsel would not resolve the issues Peter raised. The court concluded: "Lastly, the financial burden of replacing disqualified counsel is minimal, if non-existent here, as Thanasi is an attorney and he can represent himself."

Thanasi, represented by attorney Hester, filed this appeal. Concurrently with the notice of appeal, Thanasi submitted a notice stating that enforcement of the probate court's disqualification order had been automatically stayed. Peter does not dispute Thanasi's assertion that the disqualification order is directly appealable. (See *Meehan v. Hopps* (1955) 45 Cal.2d 213, 215-216; *Jarvis v. Jarvis* (2019) 33 Cal.App.5th 113, 128, but see *Ponce-Bran v. Trustees of Cal. State University* (1996) 48 Cal.App.4th 1656, 1661, fn. 3 [observing criticism of the second rationale of appealability in *Meehan*].)

## DISCUSSION

### I. *Motion to Dismiss Appeal*

Peter moves to dismiss this appeal (as well as Thanasi's appeal from a temporary restraining order entered in Peter's malpractice case) as frivolous

9

or taken solely for delay.[6] Peter discusses legal principles relating to mandatory disqualification of attorneys (see *O'Gara Coach County Co., LLC v. Ra* (2019) 30 Cal.App.5th 1115, 1125 [disqualification required if attorney represents party adverse to a former client if the current representation involves legal services performed for the former client or where a substantial relationship exists between the former and current representation]; *Fiduciary Trust Internat. of California v. Superior Court* (2013) 218 Cal.App.4th 465, 480 [explaining substantial relationship test]) and the principle that an attorney's conflict is normally imputed to the law firm as a whole. (See *City and County of San Francisco v. Cobra Solutions, Inc., supra*, 38 Cal.4th at pp. 847-848; *O'Gara*, at p. 1125.)

Peter argues it is "beyond dispute that this probate action involves the very legal services that Preovolos Lewin performed for [him]"—creating the challenged irrevocable trusts—and thus "it should be beyond dispute that disqualifying [Preovolos Lewin] from representing any of the defendants against Peter was not only well within the trial court's discretion, but was *required*, regardless of whether the conflict is viewed as one of concurrent or successive representation of adverse interests." He argues Thanasi's two arguments in opposing Peter's disqualification motion—that Preovolos Lewin could not be disqualified because Thanasi has the right to defend himself, and that Peter waived any attorney-client privilege by consenting to the joint representation with his wife and filing the malpractice action—have no reasonable chance of success and are completely without merit.

---

6      We ordered both motions to be considered concurrently with the appeals. At the same time, we denied Peter's requests to lift the stay of enforcement of the court's disqualification order and to require Thanasi to post a bond.

10

"[A]ppellate courts possess the . . . inherent power to summarily dismiss any action or appeal which has as its object to delay, vex, or harass the opposing party or the court, or is based upon wholly sham or frivolous grounds." (*Ferguson v. Keays* (1971) 4 Cal.3d 649, 658; see also *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650; *People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1318.)  An appeal is frivolous if it was either prosecuted for an improper motive, such as to delay the effect of an adverse judgment, or "indisputably has no merit" that is, when any reasonable attorney would agree the appeal is "totally and completely without merit." (*Marriage of Flaherty*, at p. 650; *Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 284.)  The court must be able to readily determine this from a brief inspection of the record.  (Accord, *Zimmerman v. Drexel Burnham Lambert Inc.* (1988) 205 Cal.App.3d 153, 162 [relatively short record readily showed the appeal lacked merit].)  The power to dismiss an appeal however "must be used with extreme rarity . . . ." and "should not be used except in the absolutely clearest cases." (*Brar*, at pp. 1318, 1319.)  One reason for this rule "is that determination whether an appeal is frivolous entails at least a peek at the merits—if not, as is usually the case, a thorough review of the record— and, having taken that look, the appellate court is in a position to affirm whatever was appealed rather than dismiss the appeal." (*Brar*, at p. 1319.)

In this case, we must examine Thanasi's arguments and review the record to determine whether his appellate contentions have arguable merit. Accordingly, we decline to dismiss the appeal.  Having reviewed each of Thanasi's points (and points he does not make), we conclude his arguments are without merit, and on that basis, affirm the order.

II. *Thanasi Ignores the Relevant Standard of Review*

11

The first glaring omission of Thanasi's briefing is that he has not mentioned or applied the well-settled standard of review for disqualification orders: the deferential abuse of discretion standard. (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159; *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 (*SpeeDee Oil*).) This standard is difficult to overcome, even though a disqualification motion "involves concerns that justify careful review of the trial court's exercise of discretion." (*SpeeDee Oil*, at p. 1144.) It is Thanasi's burden to establish an abuse of discretion. (*Gilbert v. National Corp. for Housing Partnerships* (1999) 71 Cal.App.4th 1240, 1250.)

Under the abuse of discretion standard, where there are disputed factual issues, "a reviewing court's role is simply to determine whether substantial evidence supports the trial court's findings of fact; 'the reviewing court should not substitute its judgment for . . . express or implied [factual] findings [that are] supported by substantial evidence.' " (*In re Charlisse C.*, *supra*, 45 Cal.4th at p. 159.) A court's " 'application of the law to the facts is reversible only if arbitrary and capricious.' " (*Ibid*.) Our basic inquiry is " 'whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered.' " (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598; *Los Angeles County Metropolitan Transportation Authority v. Continental Development Corporation* (1997) 16 Cal.4th 694, 722.) A showing is insufficient if it "presents a state of facts which simply affords an opportunity for a difference of opinion." (*Gilbert v. National Corp. for Housing Partnerships*, *supra*, 71 Cal.App.4th at p. 1250.) We "affirm the ruling unless 'there is no reasonable basis for the trial court's decision.' " (*Antelope Valley Groundwater Cases* (2018) 30 Cal.App.5th 602, 701.)

Notably, Thanasi does not address the court's factual findings or challenge the evidence supporting them, particularly its finding that Peter is a former client of Thanasi and Preovolos Lewin, or that Preovolos Lewin represented Litsa, with whom Peter is now in a family dispute. He does not mention the court's finding that he and possibly Preovolos Lewin might be witnesses in the probate action.[7] Absent a challenge to the sufficiency of the evidence, we do not disturb these findings, and additionally presume the existence of every fact the court could reasonably deduce from the evidence (*People v. Morales* (2020) 10 Cal.5th 76, 88), indulging reasonable inferences the court *might have* drawn. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1008; see also *Antelope Valley Groundwater Cases*, *supra*, 30 Cal.App.5th at p. 701 [reviewing court defers to lower court's express and implicit findings for which there is substantial evidentiary support].)

---

[7] The court ruled: "Thanasi and possibly Preovolos & Lewin [*sic*] may be witnesses in this case. In ruling on the [probate] Petition, the court will have to determine the validity of the Trust and Postmarital Agreement, which were prepared by Thanasi though the firm, and Thanasi is familiar with the facts underlying the creation of both documents. Moreover, there is a conflict of interest in that Thanasi is a beneficiary under the Trust and appointed Trust Protector with very broad powers to manage the trust, including amending the trust, adding or removing beneficiaries and resolving any disputes. As such, Thanasi has a personal stake in the outcome of the Petition as well." The advocate-witness rule prohibits an attorney from acting as both an advocate and a witness in the same proceeding. (*Doe v. Yim* (2020) 55 Cal.App.5th 573, 581.) A trial court has discretion to disqualify a likely advocate-witness as counsel where there is " 'a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process,' " even despite client consent. (*Id.* at p. 582, quoting *Lyle v. Superior Court* (1981) 122 Cal.App.3d 470, 482.) Thanasi's failure to address the court's ruling on this ground gives us an independent basis to affirm the disqualification order simply on the presumption of its correctness. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 181.)

13

III. *The Probate Court Order Expressly Allows Thanasi to Represent Himself*

As stated, Thanasi's main argument, which Peter does not dispute, is that he has a fundamental right to represent and defend himself. But in his brief he "submits that *his firm* should be allowed to represent him in this matter . . . ." In substance, Thanasi equates himself with his law corporation Preovolos Lewin: "For purposes of the disqualification motion, Defendant Thanasi (and his firm, Preovolos Lewin), was the attorney."

The probate court found that Thanasi in opposing the motion was "not representing himself in pro per." This finding is supported in part by Thanasi's opposing papers as well as the court's own minute order, which show attorney Hester appeared for and represented Thanasi, who is a party in the matter. Thus, the court ruled that "Thanasi . . . can represent himself" and its disqualification of Preovolos Lewin does not prevent Thanasi from appearing in propria persona.

During oral argument, Thanasi conceded that if the court had disqualified him it would make sense to also vicariously disqualify Preovolos Lewin. But, he argues, because the court permitted him to represent himself notwithstanding asserted conflicts, it does not make sense to disqualify the firm. He asserted there is no authority to permit this, and the court committed "legal error" in doing so. In his reply brief, Thanasi acknowledges that attorney Hester is not him, and Preovolos Lewin is a corporation, but he repeats his argument below that "Peter's purported concerns about conflicts of interest and supposed violations of privilege and loyalty will not be resolved by new counsel." He says "there is no logical or legal basis" to say he can represent himself but that Preovolos Lewin, which he owns 100 percent, cannot defend him.

14

Thanasi cites no authority for these assertions (other than to distinguish *Flatt v. Superior Court* (1994) 9 Cal.4th 275 (*Flatt*) and challenge the application of rule 1.7, which we address below), or the proposition that representation by Preovolos Lewin—a separate corporate entity with other individual attorney employees—is the same as Thanasi representing himself as a party to the matter. "It is fundamental . . . that a 'corporation is a distinct legal entity separate from its stockholders and from its officers.'" (*Merco Constr. Engineers, Inc. v. Municipal Court* (1978) 21 Cal.3d 724, 729.) The distinction in representation is evidenced by cases involving attorney fee requests by pro se attorney litigants for whom recovery of fees is denied (see *Trope v. Katz* (1995) 11 Cal.4th 274, 286), and attorney litigants who are represented by other attorneys in their own law firms on matters involving the attorney's own personal interests. (See *Gilbert v. Master Washer & Stamping Co.* (2001) 87 Cal.App.4th 212, 214.) In the latter instance, the attorney litigant may recover attorney fees because "as an attorney litigant represented by other attorneys in his firm, [the attorney] is not a litigant in propria persona . . . ." (*Id.* at p. 220.)

We need not discuss the intricacies of these cases or their rationale any further, because Thanasi makes no effort to support his apparent position with authority and reasoned legal arguments. He has not met his burden to establish that the probate court's order—which disqualified Preovolos Lewin from representing Thanasi but not Thanasi from representing himself—is outside the bounds of reason as somehow violating his fundamental right torepresent himself in the probate litigation

IV. *Thanasi's Arguments Concerning the Rules of Professional Conduct*

Thanasi makes a series of arguments as to why the California Rules of Professional Conduct do not prevent him from representing himself, and

15

particularly why rules 1.7 and 1.9 do not apply. He points to asserted inadequacies in *Peter*'s showing and distinguishes the cases *Peter* cited, arguing Peter misapplied the applicable law as to conflicts of interest.

Thanasi's focus on the flaws in Peter's arguments is misplaced. Thanasi bears the burden on appeal to demonstrate the court's ruling was arbitrary and capricious or outside the bounds of reason. We acknowledge that where the court reached conclusions of law or where there are no material factual issues, our review is de novo (*In re Charlisse C.*, *supra*, 45 Cal.4th at p. 159; *SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1144) and "a disposition that rests on an error of law constitutes an abuse of discretion." (*Ibid.*) We address Thanasi's points with those principles in mind, but conclude they lack merit for the reasons explained below.

A. *Application of Rules 1.7 and 1.9*

Pointing to Peter's summary of rule 1.7,[8] Thanasi argues that "for purposes of this rule, there must be three people: 1) an attorney, 2) a client, and 3) a former client." He maintains "[p]arty number two is missing here because there is no client that Thanasi has chosen to represent." Similarly,

---

[8]    Rule 1.7 provides in part: "(a)  A lawyer shall not, without informed written consent from each client and compliance with paragraph (d), represent a client if the representation is directly adverse to another client in the same or a separate matter.  [¶]  (b)  A lawyer shall not, without informed written consent from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests."

16

with respect to both rules 1.7 and 1.9,[9] Thanasi argues he is not representing any adverse third party; and there is no conflicting successive representation on substantially related matters.: "Thanasi had not been hired by a client that is adversarial to Peter"; "[Thanasi] is not representing 'another person' against [Peter]"; "Thanasi's representation of himself does not present the scenarios described in [cases describing conflicts of interest such as *Flatt*, *supra*, 9 Cal.4th 275] since there is no representation of a new client whose interests are adverse to an old client." Though Thanasi acknowledges that in a successive representation scenario, courts focus on whether confidences have been jeopardized and the former client's expectation of confidentiality must be preserved, he asserts "[t]hat is not the case here."[10]

These arguments are based on the incorrect premise that there is no third party client adverse to Peter because Thanasi is only representing himself. They once again conflate Thanasi with his law firm Preovolos Lewin, and ignore the probate court's factual finding that Peter was a former client of Preovolos Lewin. Thanasi fails to acknowledge that by his motion, Peter (the former client) sought to disqualify Preovolos Lewin (the law firm

_____

[9]    Rule 1.9, subdivision (a) provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent."

[10]    Thanasi also acknowledges an attorney's duty of loyalty in a concurrent representation scenario, arguing this matter does not involve concurrent representation. The simultaneous representation of opposing parties in the same litigation is "the most egregious example" of an ethical violation respecting attorney-client conflicts. (*Flatt*, *supra*, 9 Cal.4th at pp. 282-283.) Preovolos Lewin is not purporting to represent Thanasi and also Peter in the same litigation, so there is no issue as to simultaneous or concurrent representation.

and its attorney employees) from representing Thanasi (the current client) in Peter's probate matter. Thanasi does not challenge the court's finding that both he and Preovolos Lewin have intimate knowledge of the circumstances relating to both the trust and postmarital agreement at issue in the probate action, as well as his "finances and businesses . . . ." As Peter points out, Thanasi does not dispute that Preovolos Lewin's previous work on Peter's behalf (drafting the irrevocable trust and the postmarital agreement) is on a subject substantially related to its representation of Thanasi in the probate action challenging those same documents. "Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm. (*Flatt*, *supra*, 9 Cal.4th at p. 283, citing in part *Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, 117 ["[W]here an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law"]; and see *California Self-Insurers' Security Fund v. Superior Court* (2018) 19 Cal.App.5th 1065, 1072 [stating "firmly established" rule of law firm's vicarious disqualification for attorney's ethical conflict in the absence of an effective ethical screen].) Though Peter's motion sought to disqualify both Thanasi and Preovolos Lewin, again, the probate court's order does not prevent Thanasi from appearing in pro per in the matter.

B. *Purpose of Rules of Professional Conduct*

18

Thanasi further argues that the purpose of the California Rules of Professional Conduct is to establish standards for discipline; that the failure to comply with a rule is a basis for invoking the disciplinary process, not to be a basis for civil liability or prevent a defendant attorney from representing himself. Thanasi argues that if some violation or breach of the rules occurred, the probate court was not the proper forum to make that determination. The latter assertion is made without citation to authority, and for that reason we disregard it.

It is an unremarkable proposition that the State Bar Rules of Professional Conduct govern discipline and not ethical standards, and a rule violation does not necessarily compel disqualification in the courts. (*Hetos Investments*, *Ltd. v. Kurtin* (2003) 110 Cal.App.4th 36, 47; see also *Antelope Valley Groundwater Cases*, *supra*, 30 Cal.App.5th at p. 621; *Kirk v. First American Title Ins. Co.* (2010) 183 Cal.App.4th 776, 792; *Great Lakes Construction*, *Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356, fn. 5.) But courts analyzing questions of disqualification obtain guidance from these rules. (*Antelope Valley*, at p. 621; see *Flatt*, *supra*, 9 Cal.4th at p. 282 [deriving the "dispositive principle" governing an attorney-client conflict from the Rules of Professional Conduct]; *Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 462-463 [judge's inherent authority to disqualify an attorney " 'is frequently exercised on a showing that disqualification is required under professional standards governing avoidance of conflicts of interest or potential adverse use of confidential information' "].)

Here, while the probate court quoted rules 1.7 and 1.9, it also recognized that under Code of Civil Procedure section 128, subdivision (a)(5) it had the inherent power to control the conduct of its ministerial officers in

furtherance of justice. This was a proper explanation of its authority in considering whether to disqualify the Preovolos Lewin firm. (See *SpeeDee Oil, supra*, 20 Cal.4th at p. 1145; *Capra v. Capra* (2020) 58 Cal.App.5th 1072, 1092.) The probate court expressly stated that it was to "undertake a cautious balancing of competing interests," that is, " 'weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.' " This again was a proper statement of the relevant considerations. (See *SpeeDee Oil*, at pp. 1144-1145; *Kirk v. First American Title Ins. Co., supra*, 183 Cal.App.4th at pp. 791-792.) Thanasi does not establish that the probate court disqualified the Preovolos Lewin firm based strictly on its or Thanasi's violation of the Rules of Professional Conduct, and we see nothing in the probate court's order purporting to do so. Thanasi's bare points concerning the disciplinary purpose of these rules do not demonstrate that the court abused its discretion.

C. *Thanasi's Discussion of* Flatt *and* SpeeDee Oil

Thanasi argues that Peter's cited cases, including *SpeeDee Oil, supra*, 20 Cal.4th 1139, *Flatt, supra*, 9 Cal.4th 275, and *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572 did not "support[ ] disqualification under the circumstances herein and do not apply." Thanasi "does not dispute [the] basic tenet" of *SpeeDee Oil* and *Asbestos Litigation* to the extent they relate the considerations a court must assess faced with a disqualification motion. But he argues "the circumstances [in those cases] do not apply

20

because the primary concern raised by Peter will not occur." Thanasi does not further develop the assertion.

Thanasi next criticizes Peter's reliance on *Flatt*, *supra*, 9 Cal.4th 275, and points to Peter's discussion of a prior successful motion to disqualify Thanasi's law firm brought by Peter's brother, which was the subject of a 2007 unpublished opinion in this court (*In re Estate of Preovolos* (Dec. 6, 2007), D049732). Thanasi cites *Flatt*'s analogy of an attorney "serving two masters." (See *Flatt*, at p. 286 ["The mandatory rule of disqualification in cases of dual representation involving unrelated matters—analogous to the biblical injunction against 'serving two masters' (Matthew 6:24)—is such a self-evident one that there are few published appellate decisions elaborating on it"].) He then purports to quote a statement from *Flatt* concerning an attorney's successive representation of clients with adverse interests.[11] (*Flatt*, at p. 283.) Thanasi's sole argument is that "the circumstances herein did not involve 'two masters' as was the situation in all of Peter's cited cases, including the dispute with Peter and [Peter's brother], and there is no situation involving an attorney stuck between two clients with adverse interests."

*Flatt*'s "two masters" comment refers to the compromise of an attorney's duty of undivided loyalty when he or she simultaneously represents two client adversaries, a situation not presented by Preovolos Lewin's representation of Thanasi against Peter, who is a former client.

---

11 Thanasi writes: "The *Flatt* Court stated as follows on page 283: "Where an attorney successively represents clients with adverse interests, and where the subjects of two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second disqualification [*sic*]." Though the principle is correct and *Flatt* discusses it at page 283, this particular quote does not appear there, or anywhere in the opinion.

21

Thanasi's point does not change our conclusion. As we have stated, he does not challenge the court's factual findings concerning Peter's status as a former client or the substantial relationship between the subjects of the prior and current representations. Given these predicate undisputed facts, disqualification was warranted.

D. *Thanasi's Remaining Arguments*

Thanasi makes two additional arguments. He acknowledges that an attorney conflict of interest can be resolved if the first client provides informed written consent, but he states application of this rule here "would create an absurd scenario that is literally not possible" as he "would have to ask Peter's consent *if he could represent himself in the action*," an "option [that is] clearly not available here, leaving Thanasi fewer options than most attorneys face in purported conflict cases." (Italics added.) Thanasi next repeats his argument that Peter's proposed remedy—that Thanasi obtain new counsel—will not resolve the issues, given his intimate knowledge of the substantive issues raised in both the probate petition and in the malpractice claim.

The first point is misplaced. The probate court's disqualification order expressly allows Thanasi to appear in the probate action as a self-represented attorney litigant. As for the second point, the probate court addressed and rejected it below, stating: "Counsel's intimate knowledge of [Peter's] legal affairs, finances and businesses is not the issue. The issue is guarding [Peter's] right to due process of law, both procedural and substantive. For instance . . . Respondents must follow certain statutory procedures to gain access to [Peter's] personal records kept by the firm, even if the file is sitting on the desk and readily accessible in the practical sense." Thanasi's

22

reiteration of his argument below does not establish the probate court's rejection of it was an abuse of discretion.

V. *Thanasi's Assertions Concerning the Attorney-Client Privilege*

Thanasi contends based on operation of Evidence Code section 958,[12] the attorney-client privilege does not prevent him from representing himself because Peter has sued him for malpractice and makes claims of wrongdoing in the probate case, and thus Thanasi has the right to disclose communications necessary for the protection of his own rights in both cases. Thanasi devotes three and a half pages of his brief quoting from Peter's probate petition, and argues: "It is abundantly clear that Peter has attacked Thanasi and the rest of the family on multiple fronts. Peter is correct that the attorney-client privilege is 'sacred' in many respects but is incorrect when he asserts that there are no exceptions. There are, including the right of an attorney to defend himself against allegations of malfeasance and wrongdoing as Peter has repeatedly made in both the probate action and the related malpractice case."

---

[12] Evidence Code section 958 creates an exception to the attorney-client privilege "as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship." (See *O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 562; *Cassel v. Superior Court* (2011) 51 Cal.4th 113, 132 ["exception to the privilege set forth in [Evidence Code] section 958 simply acknowledges that, in litigation between lawyer and client, the client should not be able to use the privilege to bar otherwise relevant and admissible evidence which supports the lawyer's claim, or undermines the client's"].)

23

Citing Evidence Code section 912 stating the general rule concerning the manner in which the attorney-client privilege is waived,[13] Thanasi also argues Peter waived the privilege by filing exhibits in the case, namely, the irrevocable trust, the postmarital agreement, a confidential statement of facts, the Preovolos family trust as well as a restatement of that trust, and the fee agreement Peter signed. According to Thanasi, Peter thereby waived the privilege by "disclosing virtually every document and fact involving the circumstances herein."

These arguments, like most of Thanasi's other arguments, appear to be copied verbatim from his opposition papers below. And as to waiver, the probate court addressed and rejected the argument: "Respondents argue that [Peter] has waived the attorney-client privilege and consented to joint representation. However, this is an issue in dispute. There is no evidence of written consent, as required under the [R]ules of [P]rofessional [C]onduct, and the waiver by [Peter] does not appear to have been informed and could possibly be the product of duress."

To repeat, it is not enough to demonstrate an abuse of discretion for Thanasi to restate his arguments made in the probate court. As we have stated, he must establish " 'there is no reasonable basis for the trial court's decision' " (*Antelope Valley Groundwater Cases*, *supra*, 30 Cal.App.5th at p. 615) including its express and implied findings, on which we do not substitute our judgment. (*In re Charlisse C.*, 45 Cal.4th at p. 159.) The standard of review affords "considerable deference" to the trial court, and "[w]e presume

---

13     Evidence Code section 912 provides in part: "Except as otherwise provided in this section, the right of any person to claim [attorney-client privilege] . . . is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication . . . ." (Evid. Code, § 912, subd. (a).)

that [it] properly applied the law and acted within its discretion unless [Thanasi] affirmatively shows otherwise." (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 378.)  Thanasi's failure to focus on the probate court's findings and reasoning by itself allows us to conclude he has not met his appellate burden.  In any event, we conclude Thanasi's arguments are meritless.

The issue of disqualification is not determined solely by reference to evidentiary rules such as Evidence Code section 958 relating to the attorney-client privilege; the California Supreme Court has "repeatedly held that the disqualification rules are not merely intended to protect client confidences or other 'interests of the parties,'; rather, '[t]he paramount concern . . . [is] to preserve public trust in the scrupulous administration of justice and the integrity of the bar.' " (*Fiduciary Trust Internat. of California v. Superior Court, supra*, 218 Cal.App.4th at pp. 485-486, quoting *SpeeDee Oil, supra*, 20 Cal.4th at p. 1145.)  Preovolos Lewin's preparation of the now-challenged irrevocable trust and postmarital settlement calls into question the firm's duties of confidentiality owed to Peter, now that he is in a position adverse to Thanasi, and the probate court's order for disqualification furthered the public's trust in the integrity of our judicial process.  Thanasi's arguments concerning the attorney-client privilege are "not legally significant" (*Kim v. The True Church Members of Holy Hill Community Church* (2015) 236 Cal.App.4th 1435, 1455) where (1) as here, Thanasi does not challenge the substantial relationship between Preovolos Lewin's former representation of Peter and its current representation of Thanasi, and (2) there is no evidence

25

Peter consented to Preovolos Lewin taking on an adversarial role to him *on Thanasi's behalf* in the probate litigation.[14] (*Id.* at pp. 1454-1455.)

Further, even if the presence or absence of attorney-client privilege was dispositive of the disqualification question, we cannot agree that Peter's filing of the above-listed documents waived the attorney-client privilege on all communications between Preovolos Lewin and Peter in the course of Preovolos Lewin's years of representing Peter and his businesses. More specifically, the filing and disclosure of these documents did not waive the privilege for communications leading to their creation. Thanasi's mere citation to Evidence Code section 912 is not authority to the contrary.

VI. *The Family Court's Jurisdiction is Irrelevant to the Disqualification Issue*

Finally, Thanasi argues all of the probate petition's claim flow from the postmarital agreement, and because the enforceability of that agreement is the exclusive province of the family court, the probate court lacked any basis to disqualify him from defending himself. Pointing out Litsa sought in her July 21, 2020 dissolution petition for the family court to dispose of the marital estate and award support in accordance with the postmarital agreement, Thanasi maintains the principle of priority of jurisdiction permits only the family court to determine the validity, enforceability and applicability of the postmarital agreement.

Peter does not dispute the basic legal proposition concerning tribunals with concurrent jurisdiction. Rather, he disagrees with the premise that all of the probate petition claims flow from the postmarital settlement

---

[14] Though there may be a question as to whether Peter consented to Preovolos Lewin's joint representation of him and Litsa, there is no evidence Peter consented to Preovolos Lewin's representation of Thanasi in either the probate or malpractice cases.

agreement and further argues that the probate court's disqualification order does not interfere or conflict with the family court's jurisdiction.

We agree. Disqualifying Preovolos Lewin for conflicts relating to its prior representation of Peter is not a decision on the merits of the validity of the postmarital agreement, disposition of Peter or Litsa's property rights, determination of custody or support, or any other issue concerning Peter and Litsa's dissolution.

## DISPOSITION

The motion to dismiss is denied. The order is affirmed. Respondent shall recover his costs on appeal.

O'ROURKE, Acting P. J.

WE CONCUR:

IRION, J.

DATO, J.